UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ERRICK GILMORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:13-025-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES PENITENTIARY- | ) | **&** |
| McCREARY, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

**** **** **** ****

Errick Gilmore is an inmate presently confined at the United States Penitentiary-Coleman ("USP-Coleman") in Coleman, Florida.  Pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), Gilmore, proceeding *pro se*, filed this civil rights action against the defendants, various prison officials and prison staff at the United States Penitentiary-McCreary ("USP-McCreary") located in Pine Knot, Kentucky, asserting that these defendants violated his constitutional rights while he was an inmate at that prison facility. [R. 1, 11]  Gilmore has been granted pauper status.  [R. 6]

The Court must conduct a preliminary review of Gilmore's complaint because he has been granted permission to proceed *in forma pauperis* and because he asserts claims against government officials.  28 U.S.C. §§ 1915(e)(2), 1915A.  A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).  The Court evaluates Gilmore's

complaint under a more lenient standard because he is not represented by an attorney.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir.

2003).  At this stage, the Court accepts Gilmore's factual allegations as true and liberally

construes his legal claims in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56

(2007).

For the reasons set forth below, the Court will dismiss Gilmore's complaint because

based on a review of the face of Gilmore's Complaint, Amended Complaint, and the exhibits

attached thereto, Gilmore failed to exhaust his administrative remedies, as a prisoner must do

prior to filing a complaint.

# I

Gilmore claims that numerous prison officials at USP-McCreary violated several of his

rights afforded by the United States Constitution while he was an inmate there.  Gilmore has a

laundry list of complaints.  In summary,  Gilmore states that the defendants have violated:

> . . . my 1st Amendment right to Freedom of Speech through the Grievance
> Procedure.  My 5th Amendment right to due process by blocking me from getting
> relief through the grievance procedure.  My 8th Amendment right against cruel
> and unusual punishment by denying me medical attention for my injured ribs, by
> denying me medical attention twice when I had a diabetic attack, and by taking
> my cloth[e]s, sheets, blankets, towels, washcloths, soap, deodorant, and lotion and
> not allowing me to take a shower for 10 days, and allowing me to be assaulted on
> camera by 4 inmates and not charging or locking any of them up, then conspiring
> to cover it up.  They also violated my 14th Amendment right to be treated equally.

[R. 1, p. 3]

Gilmore further claims that after he was assaulted by the four inmates on November 26,

2012, none of those inmates were charged for a disciplinary offense, that he was the only inmate

who was "locked up" afterwards, and that he was charged with destroying government property,

placed in handcuffs, and removed from his cell and taken to the SHU, where he was chained to a bed for twelve hours because he had stated that he was going to complain to Captain Maruka about being assaulted.  *Id.*  Gilmore states that defendants SIS Parson, SIA Corvalt, SIS Baker, Captain Maruka, Lt. Boulet, and C/O Eliot have conspired to conceal their abuse of him and their activities in violating his constitutional rights.

Gilmore also states that prison officials have been deliberately indifferent to his serious medical needs, an Eighth Amendment violation, in that (1) his injured ribs were never x-rayed, and he was denied pain medication for the injured ribs; (2) on December 15, 2012, he, a diabetic, experienced a low blood sugar episode late in the night and that he was denied timely medical care at that time because the prison does not employ medical personnel to be available during the third shift, resulting in his having to wait until morning to receive treatment for that low blood sugar episode.

Gilmore also claims that the grievance system at the prison does not work, that his grievances disappear, and/or that Counselor Partin, Counselor Lawson, and Unit manager Roane will not file his grievances, retaliated against him, and threatened to keep him in SHU because he continued to file grievances.  Gilmore asserts that his Fifth Amendment right to due process was violated in that he was originally placed in the SHU under a bogus protective custody order, when he had not requested to be placed in protective custody.

For relief, Gilmore requests that he receive the following injunctive relief: (1) immediate treatment for injured ribs, (2) that the medical department stop mixing other medications with his insulin in order to save money on needles, and (3) that USP-McCreary be ordered to employ a

third shift medical nurse.  Gilmore requests $10,000,000 in compensatory damages for pain and

suffering and $50,000,000 in punitive damages, and a jury trial.

Gilmore's complaint is accompanied by numerous exhibits, comprising a total of 57

unnumbered pages, but are identified in alphabetical order as Exhibit A through Exhibit W,

which appear to be evidence of Gilmore's filing of grievances, Requests for Informal Resolution,

and numerous Requests for Administrative Remedy, concerning various incidents and situations

at USP-McCreary, beginning with his alleged assault by four other inmates on November 26,

2012.  These exhibits are more particularly described below:

**Exhibit A** - Administrative Remedy Procedure For Inmates, Informal Resolution Form,

dated December 3, 2012.  This request concerns Gilmore's not being allowed to take a shower

for 10 days, not being provided with clean clothes, being denied underwear, and being forced to

wear a paper gown exposing his genitalia to female prison staff.  He requests that these

constitutional violations cease and that the various prison employees involved be sanctioned.

**Exhibit B** - unnumbered Request for Administrative Remedy, dated January 8, 2013,

concerning his being assaulted by four inmates on November 26, 2012, and the alleged cover-up

of this assault and falsified reports by certain prison officials.  Gilmore requests $100,000 in

damages.

**Exhibit C** - Request for Administrative Remedy #716779-F1, dated December 3, 2012,

concerns the same assault incident by four inmates occurring on November 26, 2012.

**Exhibit C-2** - Warden Holland's response to Request for Administrative Remedy

#716779-F1; dated January 10, 2013. Warden Holland advises that: "An investigation into this

matter was conducted and our records indicate that an investigation is still open in regards to this

case." [R. 1-3, p. 13] The Warden informs Gilmore that if he is dissatisfied with the response, he may appeal to the Regional Director and file same within 20 days.

**Exhibit D -** one-page, undated, unnumbered Request for Administrative Remedy, concerns (1) prison employees' alleged retaliation against Gilmore for filing grievances and standing up for his rights, (2) the conspiracy to cover up the assault by four inmates, (3) being taken to the SHU in the absence of being charged with an offense, (4) being chained to a bed for 12 hours, (5) his clothes being taken for 10 days.  Gilmore wants to file an affidavit and requests damages of $100,000 per day for these violations.

**Exhibit E -** unnumbered Request for Administrative Remedy dated December 31, 2012, regarding staff misconduct and requests that a third shift nurse be employed in medical department.  Also requests $120,000 in damages and that Lt. Mooney and C/O Eppely be fired.

**Exhibit F -** unnumbered Request for Administrative Remedy dated January 6, 2013, complaining that he is only being provided with one BP8 form per week.  Requests that several prison employees be fired or suspended for staff misconduct and that a third shift medical nurse be provided.  Requests $100,000 in damages for pain and suffering.

**Exhibit G** - Request for Administrative Remedy #717219-F1, dated December 19, 2012, claiming that a prior BP8 #120312B had mysteriously been lost.  Reiterates the claimed violations for being placed in a paper gown that did not provide sufficient coverage and having to walk in the presence of female staff with his genitals being visible.  Reiterates that he was subjected to these measures in the absence of an incident report being issued to him.

**Exhibit H** - an unidentified, undated page that appears to be a continuation page from a Request for Administrative Remedy.  Reiterates that on December 3, 2012, he obtained a BP8

and a BP9 form from Counselor Partin, completed them and gave them to Unit Manager Roan on

December 6, 2012, and that on December 17, 2012, upon inquiry to Counselor Partin about their

status, Counselor Partin advised him that he had not seen these completed forms, and that now

they are time-barred.  Claims that Counselor Partin would not let him file a new BP8.  Claims

that the Unit Team in 6 Building is trying to conceal his assault by the four inmates and his being

stripped of his clothes and forced to wear a paper gown for 10 days.  Reiterates that his First,

Fifth, and Eighth Amendment rights have been violated.

**Exhibit I** - unnumbered Request for Administrative Remedy dated December 30, 2012,

concerning the same prison staff misconduct raised in previous Requests for Administrative

Remedies.  He requests that he be given as many BP8 forms as he needs because Counselor

Partin only comes to the SHU once per week.  He also requests that Counselor Partin be

suspended and that he be awarded $10,000 in damages for pain and suffering.

**Exhibit J** - Warden Holland's response to Request for Administrative Remedy #716779-

F1; dated January 10, 2013.  This exhibit is a duplicate of Exhibit C-2 above.

**Exhibit K -** Administrative Remedy Procedure For Inmates, Informal Resolution Form,

dated January 4, 2013.  This request concerns his assault by four inmates, being placed in the

SHU in protective custody without requesting protective custody status, and the disappearance of

his prior BP8 form.  He requests to go to the compound or to be transferred to another prison.

Counselor Lawson's response advised Gilmore that he was placed in protective custody at 9:10

p.m. on November 26, 2012, due to his disruptive behavior.

**Exhibit L** - a receipt acknowledging that Gilmore's Request for Administrative Remedy

#716779-F1 was received on December 12, 2012, and that a response is due on January 1, 2013.

**Exhibit M -** Warden Holland's response to Request for Administrative Remedy

#717219-F1; dated January 14, 2013.  Warden Holland advises that allegations of staff

misconduct are taken seriously and are thoroughly reviewed.  Informs Gilmore that if he is

dissatisfied with Warden's response, he may appeal to the Regional Director and file same within

20 days.

**Exhibit N -** Incident Report dated November 30, 2012, charging Gilmore with Refusing

programs (Code 306), Refusing an Order (Code 307), and Tampering with a locking device

(Code 208).

**Exhibit O -** unnumbered Request for Administrative Remedy, dated January 4, 2013;

concerns staff misconduct about being able to obtain only one BP8 form per week and reiterates

claims of retaliation by prison staff.

**Exhibit P -** unnumbered Regional Administrative Remedy Appeal[1], dated January 6,

2013.  Reiterates claims about abuse from prison officials.  Requests that C/Os Strunk, Baird,

Marcum, Bowles, Maley, Lt. Boulet, and Warden J. C. Holland all be placed in a paper gown for

various lengths of time.  Reiterates that he never received an Incident Report for destruction of

government property.  Requests $70,000 damages for pain and suffering from some prison

employees and $120,000 damages from other prison employees.

---

[1]Although Gilmore utilized the form for filing an appeal to the BOP's Regional Office, it makes no reference to a prior Request for Administrative Remedy (by case number, date, or otherwise) or the Warden's response thereto.  Additionally, none of Gilmore's exhibits include a decision by the BOP's Regional Office to any appeal.  Thus, it appears that Gilmore intended to file a Request for Administrative Remedy and erroneously used the form for filing a Regional Administrative Remedy Appeal.

**Exhibit Q -** unnumbered Request for Administrative Remedy, dated January 8, 2013. Gilmore notes on this form that he used that form because he is allowed only one BP8 per week and because this matter can not be resolved on a BP8 level.  Claims that Administrative Remedy Coordinator J. Bishop conspired with Warden J. C. Holland to conceal his being assaulted by four inmates on November 26, 2012.  Requests the following relief:  (1)  that J. Bishop correct the remedy receipt he gave Gilmore on Case #716779-F1, or (2) J. Bishop remove himself as the Administrative Remedy Coordinator, or (3) J. Bishop be suspended for 90 days.

**Exhibit R** - Request for Administrative Remedy #719064-F1, dated January 6, 2013, concerning staff misconduct, delay or access to medical care and administrative remedy procedures.

**Exhibit R-2**[2] - a Rejection Notice dated January 16, 2013, advising Gilmore that his Request for Administrative Remedy #719064-F1 concerning delay or access to medical care and administrative remedy procedures is rejected for two different reasons.  Advises Gilmore that he may resubmit this request in proper form within five days of the date of the rejection notice.

**Exhibit S** - Request for Administrative Remedy #719020-F1, dated January 3, 2013, concerning staff misconduct, delay or access to medical care, and his being placed in administrative detention.  Reiterates same complaints raised previously regarding assault on November 26, 2012, being placed in the  SHU, being stripped of clothes and placed in a paper gown, chained to a bed for 12 hours, and the lack of a third shift medical nurse.

---

[2]Gilmore identified this exhibit as Exhibit R; thus, he has two different exhibits labeled as Exhibit R.  Because this exhibit is a rejection notice concerning the first Exhibit R, it would be more properly characterized as "Exhibit R-2."

**Exhibit S-2** - a Rejection Notice dated January 16, 2013, advising Gilmore that his Request for Administrative Remedy #719020-F1 concerning delay or access to medical care, placement in administrative detention, reviews, and release is rejected for two different reasons. Advises Gilmore that he may resubmit this request in proper form within five days of the date of the rejection notice.

**Exhibit T** - undated Request for Administrative Remedy #719050-F1, reiterating claims of staff misconduct and improper administrative remedy procedures. Requests being released to the compound, that Lt. McDowall, Lt. Boulet, Lt. SIS Parson, SIA Corvalt, SIS Lt. Baker and C/O Eliott be fired, and $10,000 in damages for every day spent in the SHU and been mistreated, in violation of his constitutional rights.

**Exhibit T-2**[3] - a Rejection Notice dated January 16, 2013, advising Gilmore that his Request for Administrative Remedy #719050-F1 concerning administrative remedy procedures is rejected because two different reasons. Advises Gilmore that he may resubmit this request in proper form within five days of the date of the rejection notice.

**Exhibit U -** Request for Administrative Remedy, #719054-F1, dated January 8, 2013. Gilmore notes on this form that he used that form because he is allowed only one BP8 per week and because this matter can not be resolved on a BP8 level. Claims that Administrative Remedy Coordinator J. Bishop conspired with Warden J. C. Holland to conceal his being assaulted by four inmates on November 26, 2012. Requests following relief: (1) that J. Bishop correct the

---

[3]Gilmore identified this exhibit as Exhibit T; thus, he has two different exhibits labeled as Exhibit T. Because this exhibit is a rejection notice concerning the first Exhibit T, it would be more properly characterized as "Exhibit T-2."

remedy receipt he gave Gilmore on Case #716779-F1, or (2) J. Bishop remove himself as the

Administrative Remedy Coordinator, or (3) J. Bishop be suspended for 90 days.[4]

**Exhibit U-2**[5] - a Rejection Notice dated January 16, 2013, advising Gilmore that his

Request for Administrative Remedy #719054-F1 concerning administrative remedy procedures is

rejected because he submitted more than one continuation page with it.  Advises Gilmore that he

may resubmit this request in proper form within five days of the date of the rejection notice.

**Exhibit V -** Request for Administrative Remedy, #719012-F1, dated December 30, 2012.

Concerns same prison staff misconduct raised in previous Request for Administrative Remedy.

He requests that he be given as many BP8 forms as he needs because Counselor Partin only

comes to the SHU once per week.  He also requests that Counselor Partin be suspended and that

he be awarded $10,000 in damages for pain and suffering.[6]

**Exhibit V-2**[7] - a Rejection Notice dated January 16, 2013, advising Gilmore that his

Request for Administrative Remedy #719012-F1 concerning administrative remedy procedures is

rejected because (1) he did not attempt informal resolution prior to submission of administrative

remedy request, or (2) he did not provide the necessary evidence of his attempt at informal

---

[4]Exhibit U is a duplication of Exhibit Q.  They are identical except that Exhibit Q contains no case number, while Exhibit U does.

[5]Gilmore identified this exhibit as Exhibit U; thus, he has two different exhibits labeled as Exhibit U.  Because this exhibit is a rejection notice concerning the first Exhibit U, it would be more properly characterized as "Exhibit U-2."

[6]Exhibit V is a duplication of Exhibit I.  They are identical except that Exhibit I contains no case number, while Exhibit V does.

[7]Gilmore identified this exhibit as Exhibit V; thus, he has two different exhibits labeled as Exhibit V.  Because this exhibit is a rejection notice concerning the first Exhibit V, it would be more properly characterized as "Exhibit V-2."

resolution.  Advises Gilmore that he may resubmit this request in proper form within five days of the date of the rejection notice.

**Exhibit W -** unnumbered Request for Administrative Remedy, dated January 14, 2013.  Generally, concerns staff misconduct, but in particular, Gilmore claims that Case Manager Jamison mishandled his BP8.  Claims prison employees conspired to keep him in protective custody in SHU, even though he had not been charged with a disciplinary offense.  For relief, he requests that Jamison be fired or at least suspended for 90 days without pay, that SIA Corvalt, SIS Parson, SIS Baker, and Unit Manager Roan be fired for this cover-up, that his reclassification be done immediately, and that he receive $200,000 per day in compensatory damages for pain and suffering until his reclassification is done.

## II

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. §1997e(a), requires a prisoner to first exhaust whatever administrative remedies are available to him before suit is filed.  Based on this provision, regardless of the relief offered through the administrative procedures, prisoners are required to exhaust all administrative remedies prior to filing a lawsuit regarding prison life.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  This requirement applies to "all inmate suits about prison life, whether they involve general circumstance or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 525 (2002).  The Supreme Court has further held that the PLRA requires proper exhaustion of the administrative remedy process, as "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The Supreme Court stressed that the benefits of exhaustion "can be realized only if

the prison grievance system is given a fair opportunity to consider the grievance.  The prison

grievance system will not have such an opportunity unless the grievant complies with the

system's critical procedural rules."  *Id*. at 95.  The BOP's four-tiered administrative remedy

scheme, available to inmates who have a complaint about their confinement, is set out in

Administrative Remedy Program Statement Number 1330.16 and 28 C.F.R. §§ 542.10-542.[8]

Although Gilmore has filed numerous BP8s and numerous Requests for Administrative

Remedy,[9] it is clear from his Complaint, Amended Complaint, and the 57 pages of exhibits

attached thereto, as itemized and summarized above, that he did not exhaust his administrative

remedies with respect to any of his Requests for Administrative Remedy.  Instead of appealing

the denial of any of his Requests for Administrative Remedy to the BOP's Regional Office, and

then on to the BOP's Central Office, if necessary, it appears that Gilmore persisted in a pattern of

repeated filing of the same or similar Requests for Administrative Remedy concerning the same

---

[8]The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R.  §542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing staff with an opportunity to correct the problem, before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a).  If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11].  *See* §542.15.

The administrative procedure includes established response times.  §542.18.  As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days.  Only one extension of time of 20-30 days, in writing, is permitted the agency.  If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

[9]Gilmore filed two Informal Requests for Resolution (Exhibits A and K), eight unnumbered Requests for Administrative Remedy (Exhibits B, D, E, F, I, O, Q, and W), seven numbered Requests for Administrative Remedy (Exhibits C, G, R, S, T, U, and V), and one form captioned "Regional Administrative Remedy Appeal" (Exhibit P).

subject matter on which he had either received no response from the Warden or that the Warden had rejected for various deficiencies, but gave Gilmore an opportunity to correct the deficiency and resubmit. There is no evidence that Gilmore attempted to resubmit a previously rejected Request for Administrative Remedy. Instead, it appears that he simply chose to file a new Request for Administrative Remedy concerning the same complaint or subject matter.

Thus, in the present case, Gilmore has failed to fully and properly exhaust his grievances pursuant to the administrative exhaustion procedures, "in accordance with all of the provisions thereof." *Jackson v. Walker*, No. 6:07-230-DCR, 2008 WL 559693 at *9, (E.D. Ky. Feb. 27, 2008). "In *Ngo*, the Supreme Court made it clear that 42 U.S.C. 1997e(a) requires available administrative procedures to be completed properly, not in a self-designated hodgepodge of procedures taken from various parts of the regulations." *Id*. "'Proper exhaustion' means that the plaintiff complied with the administrative 'agency's deadline and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.'" *Morton v. Daviess County Detention Center*, 4:08-CV-P30-M, 2009 WL 960495 at *2, (W.D. Ky. April 7, 2009) (citing *Woodford v. Ngo*, 548 U.S. at 90).

Gilmore has failed to comply with the requirements of the PLRA in that he failed to address the allegations he raised in the *Bivens* complaint through the proper administrative remedy procedures. *Woodford* confirmed that these requirements are mandatory. *See, e.g., Macias v. Zenk*, 495 F.3d 37, 44 (2nd Cir. 2007) (Notice of a claim alone is not sufficient after *Woodford v. Ngo*, which permits suit only after "proper exhaustion" of the administrative system); *Bailey-El v. Federal Bureau of Prisons*, 246 F.App'x. 105, 107-08 (3rd Cir. 2007) (Plaintiff had no excuse for failing to follow procedures for appeals). A prisoner cannot fail to

file an administrative grievance, or abandon his efforts to complete the administrative process altogether. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

Gilmore's failure to properly exhaust his underlying Bivens grievances through the available administrative remedies denied the agency the opportunity to address the issue at hand at all administrative levels, denied the Court with a proper administrative record, and failed to set forth a proper finding of facts. The allegations raised in the underlying *Bivens* claim, which contain assertions of civil rights violations, should have been grieved separately through the proper administrative remedy procedures. *See Macias v. Zenk*, 495 F.3d at 44 (Notice of a claim alone is not sufficient after *Woodford*, which permits suit only after "proper exhaustion" of the administrative system). 548 U.S. at 90. Since it is clear from the complaint, as amended, and the exhibits attached thereto that Gilmore has not exhausted his administrative remedies, dismissal is appropriate upon initial review. *Jones v. Bock*, 549 U.S. 199, 215 (2007) (*quoting Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) ("A complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face.").

III

Accordingly, for the reasons stated, it is hereby **ORDERED** as follows:

1.      Gilmore's Complaint [R. 1] and Amended Complaint [R. 11] are **DISMISSED** for Gilmore's failure to exhaust his administrative remedies and this matter is **STRICKEN** from the docket.

2.      Gilmore's motion for the appointment of counsel [R. 13]; motion for a hearing [R. 14]; and motion for emergency injunction [R. 16] are **DENIED** as moot.

3.      The Court will enter an appropriate judgment.

This 7th Day of November

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge